UNITED STATES BANKRUPTCY COURT                    FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

_____
In re                                                   :
                                                        :      Chapter 7
JOHN T. CHASE,                                          :
                                                        :      Case No. 05-45706 (AJG)
                              Debtor.                   :
_____                :
                                                        :
JOHN T. CHASE,                                          :
                                                        :
                              Plaintiff,                :
                                                        :
        v.                                              :      Adv. Pro. No. 08-01128 (AJG)
                                                        :
KRISTIN F. CHASE,                                       :
                                                        :
                              Defendant.                :
_____                :

**OPINION ON MOTION TO DISMISS**

Before the Court (the "Court")[1] is the Motion to Dismiss this adversary proceeding (the

"Motion") filed by Kristin F. Chase (the "Defendant"), the estranged spouse of debtor John T.

Chase (the "Debtor").  In the complaint commencing this adversary proceeding, the Debtor seeks

to discharge a debt owed to Defendant incurred under an order of the Supreme Court of the State

of New York, County of Columbia, directing the Debtor to pay $39,243.00 for mortgage

payment arrears on the couple's marital residence.  The Debtor seeks relief on three grounds:

First, that the debt is not a debt for alimony, maintenance, or support, and therefore is not within

the non-dischargeability provision for such debts under former 11 U.S.C. § 523(a)(5);[2] second,

---

[1] This opinion contains numerous references to various state and federal courts.  For clarity, this court will be identified as the "Court".

[2] Section references are to Title 11, United States Code.  The effective date of the provisions of Pub. L. 109-8, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") was October 17, 2005.  The Debtor's petition was filed on October 12, 2005.  Unless otherwise noted herein, the provisions of the Bankruptcy

that application of the balancing tests of former §§ 523(a)(15)(A) and (B) favor discharging the debt; and third, that the actions of Defendant, which the Debtor characterizes as willful and malicious, are grounds for discharging the debt under § 523(a)(6).

Defendant's Motion is based primarily upon the preclusionary effect of the Court's rulings on prior motions by the Debtor to hold the Defendant and others in contempt of court (the "Contempt Motions") for violating the automatic stay of § 362 for attempting to collect on that debt after the Debtor's bankruptcy petition was filed.

For the reasons stated below, the Motion is granted because relief cannot be granted under § 523(a)(6); the Debtor is collaterally estopped from relitigating the issue of whether the debt is a debt for alimony, maintenance, or support; such debts are non-dischargeable under former § 523(a)(5); and since the debt is for alimony, maintenance, or support, former § 523(a)(15) is inapplicable and, therefore, the relief sought under that section cannot be granted.

## BACKGROUND

On October 12, 2005, the Debtor filed a petition for chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. The Debtor and Defendant have been involved in numerous matrimonial and custodial disputes since Defendant filed for divorce and spousal maintenance in Nassau County state court on July 1, 2003. The present motion before the Court is part of a prolonged dispute between the two parties.

**1.      Proceedings before the Supreme Court, Columbia County**

In an opinion dated July 21, 2004, the Supreme Court of the State of New York, of Columbia (the "Columbia Supreme Court") granted the Defendant exclusive use and possession of the marital residence. *See Chase v. Chase*, No. 8471-04, at 2 (N.Y. Sup. Ct. Columbia

---

Code in effect on October 12, 2005 are controlling of the issues in this case, and citations to the provisions of the Code are to the version in effect on that date.

2

County, July 21, 2004). Since the Defendant had custody of the couple's minor child at the time

of that decision, the Columbia Supreme Court required the Debtor to pay $148.77 per week in

child support and maintain health insurance for the family. *Id.* at 3. The court declined to award

temporary maintenance to the Defendant[3] but directed the Debtor to pay arrears on the mortgage

encumbering the marital home and to make future mortgage payments until further notice since

the house appeared to be the major asset of the marriage. The decision to make the Debtor

"bring the mortgage current and make the monthly payments" was made as a "reasonable

accommodation between the reasonable needs of [Ms. Chase] and the financial ability of [the

Debtor], and [was] determined with regard to the pre-separation standard of living."[4] *Id.* at 5.

On September 20, 2004, the Defendant initiated contempt proceedings alleging that the

Debtor willfully violated the July 2004 order. The Columbia Supreme Court reserved decision

without holding a hearing since a relative of the Defendant paid the outstanding arrears on the

mortgage. The parties stipulated to list the marital home for sale and that the Defendant would

receive a credit against the Debtor's share of the sale proceeds for the amount her relative paid.

(Mem. Of Law, Ex. D, Adv. Pro. No. 08-01128, Docket No. 5.) The record does not indicate

that the house was ever listed for sale by either the Debtor or the Defendant.[5]

On March 4, 2005, the Debtor sought to hold the Defendant in contempt for violating

prior court orders. By cross motion, the Defendant asked the Columbia Supreme Court to decide

---

[3] The determination not to award temporary maintenance to the Defendant was based on the short duration of the marriage and the Defendant's earning capacity. *See Chase v. Chase*, No. 8471-04, at 5 (N.Y. Sup. Ct. Columbia County, July 21, 2004).

[4] The Columbia Supreme Court noted that the Debtor was not required to "pay all the carrying charges on the marital residence as well as child support. He [was] not, in effect, paying for the child's shelter twice. Defendant remain[ed] liable for the utilities and household maintenance, and ha[d] been assessed with a portion of the child support." *Id.*

[5] During the course of Debtor's bankruptcy case, the Trustee listed the house for sale, however no motion to approve a sale was ever filed. The secured lender thereafter sought relief from the automatic stay. On August 1, 2007, the Court lifted the stay on the marital residence to permit Chase Home Finance, LLC to proceed with a foreclosure action on the house. (Order Granting Relief From The Automatic Stay, Case No. 05-47506, Docket No. 65.) The record does not indicate whether the secured lender foreclosed on the house.

3

the previously reserved contempt decision.  The court, without holding a hearing, found that the

Debtor was in contempt and sentenced him to 30 days in jail.  The court's order provided that the

Debtor could purge the contempt by paying $39,243.00 in mortgage arrears and $2,975.40 in

child support arrears within 30 days.[6]

The Debtor had filed his bankruptcy petition on October 12, 2005.  On May 19, 2006, the

Defendant, by order to show cause, again sought to hold the Debtor in contempt of the July 2004

order.  *See id.*

**2.      Proceedings before the Family Court, Columbia County**

On September 15, 2005, the Family Court, State of New York, County of Columbia (the

"Columbia Family Court") awarded the Defendant sole legal and physical custody of the parties'

child and established a visitation schedule for the Debtor.  *See Chase v. Chase,* 34 A.D.3d 1077,

1077 (N.Y. App. Div. 2006).  The Columbia Family Court ordered both parties to appear before

it once again when the Defendant failed to produce the child at one of the Debtor's scheduled

visits.  Subsequently, after regaining temporary custody of the child, the Debtor was awarded

sole legal and physical custody of the child in late 2006.  *Id.* at 1080.

**3.      Proceedings before the Court**

On May 9, 2006 the Debtor filed a pleading captioned "Affidavit in Support of Motion

for Contempt for Violating the Automatic Stay Under U.S.C. Sec 362" [sic] (case No. 05-45706,

Docket No. 6), which named the Defendant and Melody A. Mackenzie as "defendants."  On May

23, 2006, the Debtor filed a document captioned "Affidavit in Support of Motion for Contempt

---

[6] That ruling was eventually reversed by the Appellate Division, *see Chase v. Chase,* 45 A.D.3d 1206 (N.Y. App.
Div. 2007).  In reversing the Supreme Court's order holding the Debtor in contempt for failure to comply with the
prior order requiring him to make mortgage payments, the Appellate Division held that the Supreme Court's order to
show cause did not allege failure to make mortgage payments, therefore adequate notice was not given to Debtor so
that he could be expected to prepare to defend against that charge.  The Appellate Division also held that the Debtor
was denied his right to counsel, and that the contempt judgment was invalid because it did not describe
contemptuous conduct or recite all the elements of civil contempt.  *See id.*, at 1207-08.

for Violating the Automatic Stay under USC 362 [sic] and Stay of Financial Proceedings Before

Acting Supreme and Family Court Hummel and Related Columbia County Proceedings" (case

No. 05-45706, Docket No. 7) (collectively, with Docket No. 6, the "First Contempt Motion"),

which named the Defendant, Melody A. Mackenzie, Esq., Michael Varble, Esq. and Dena

Guerwitz-Varble [sic] as "defendants."  Neither of these pleadings was captioned as motions, in

violation of Fed. R. Bankr. P. 9013 (requiring that every request for an order be by written

motion, stating with particularity the grounds therefore and setting forth the relief or order

sought), and they were both filed without compliance with Local Rule of Bankruptcy Procedure

5070-1 (requiring parties to obtain a return date prior to filing motion, cross-motion or

application).  Pleadings in opposition to the First Contempt Motion were filed on June 19, 2006

by Dena A. Gurewitz and Michael R. Varble (case No. 05-45706, Docket Nos. 13 and 14).

At a hearing held on June 19, 2006, memorialized by minute order dated July 20, 2006,

the Court denied the Debtor's First Contempt Motion, holding, in part, that the Defendant's

conduct "is not in violation of the Section 362 stay.  In that such conduct are efforts to collect

nondischargeable debts from non estate assets of the Debtor."  *See* Min. Order, July 19, 2006,

Case No. 05-45706, Docket No. 15.

The Debtor subsequently filed a Petition for Contempt and Injunction (the "Second

Contempt Motion") with the Court seeking to hold the Defendant in contempt for seeking to

enforce the state contempt order by attempting to collect the $39,243.00 in mortgage arrears.  *See*

Petition for Contempt and Injunction, Case No. 05-45706, Docket No. 32.  In the Second

Contempt Motion, the Debtor alleged that the Defendant was (1) trying to collect the debt from

property of the estate, and (2) her actions to collect the $39,243.00 in mortgage arrears was an

attempt to collect an award of equitable distribution and not an award for maintenance.  *See*

Second Contempt Motion ¶ 17.  At an October 12, 2006 hearing on the Second Contempt

Motion, memorialized by minute order dated October 18, 2006, the Court stated that it would

reconsider, *sua sponte*, its earlier order ("July Order").[7]  *See* Min. Order, Oct. 18, 2006, Case No.

05-45706, Docket No. 43, at p.1.  The Court subsequently determined that it would not

reconsider the July Order because there were no grounds under Rule 60(b) that warranted

reconsideration.  *See* Min. Order, Oct. 18, 2006, Case No. 05-45706, Docket No. 43, at p.2.

The Court found the issues raised by the Debtor in the Second Contempt Motion to be

identical to the issues raised by him in the First Contempt Motion.  In both motions, the Debtor

sought to characterize his payment obligations to his estranged wife as something other than

alimony, maintenance, or support, thereby rendering her conduct as a violation of the automatic

stay.  *See* Min. Order, Oct. 18, 2006, Case No. 05-45706, Docket No. 43, at p.5.  The Court

found that it was precluded from hearing the Debtor's Petition for Contempt and Injunction

because doing so would constitute relitigation of the issues presented in the First Contempt

Motion.  *See id.* at p.7.

Specifically, in the July Order, the Court found that the debt owed to the Defendant was

nondischargeable because it was in the nature of maintenance and support.  In reaching this

conclusion the Court considered (1) the Defendant's payments for household maintenance,

utilities and nursery school; (2) her status as the custodial parent at the time; (3) her portion of

the child support obligations; (4) her lack of a state court award for temporary maintenance; and

(5) the stipulation between the parties whereby she would receive a credit from the Debtor's

share of the sale proceeds of the marital home for the amount she or her relative spent on

mortgage arrears.  *See* Min. Order, Oct. 18, 2006, Case No. 05-45706, Docket No. 43, at pp. 3-4.

---

[7] The Court acted pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and Federal Bankruptcy Rule
9024.  *See* Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024.

The Court held that collateral estoppel and res judicata prevented hearing the Second

Contempt Motion because the issue of the nature of the debt owed to the Defendant was (1)

identical to the issue determined in the July Order; (2) actually litigated and decided in the July

Order; and (3) necessary to support a valid and final judgment on the merits.  The Debtor was

also given a full and fair opportunity to litigate the issue.  *See* Min. Order, Oct. 18, 2006, Case

No. 05-45706, Docket No. 43. at pp. 5-8.  The Debtor filed a Motion for Reconsideration of the

October 12, 2006 order, which was denied.  *See* Order Signed on 10/31/2006 Denying Debtor's

Motion for Reconsideration, Case no. 05-45706, Docket No. 47.  The Debtor then appealed the

Court's order denying reconsideration.  The United States District Court for the Southern District

of New York affirmed.  *See Chase v. Chase*, No. 06 Civ. 13743, Memorandum Opinion and

Order, at 4 (S.D.N.Y. Jan. 22, 2008).  The District Court affirmed the Court's finding that the

debt owed to the Defendant by the Debtor was in the nature of support and not distribution of

marital property.  *Id.* at 9-10.

### DISCUSSION

**1.      Standards Applicable to Motion to Dismiss**

The Defendant did not file an answer in this adversary proceeding, but moved to dismiss.

Motions to dismiss are governed by Fed. R. Bankr. P. 7012, which incorporates by reference

Rule 12 of the Federal Rules of Civil Procedure.  Under Fed. R. Civ. P. 12(b) ("Rule 12(b)"),

"[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading

if one is asserted.  *But a party may assert certain defenses to a claim for relief by motion*,

including (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper

venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim

upon which relief can be granted; and (7) failure to join a party under Rule 19."  Fed. R. Civ. P.

12(b) (emphasis added).

The Motion does not set forth which, if any, of the Rule 12(b) grounds under which she seeks to dismiss this adversary proceeding.  In view of her *pro se* status, the Court has reviewed the pleadings to determine under which, if any, subsection of Rule 12(b) the Motion should be considered.  From the Court's review, it appears that the Motion is made under Rule 12(b)(6).

Under Rule 12(b)(6), the party moving for dismissal has the burden of proving that no claim has been stated.  To prevail, the movant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief."  *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  During this threshold review, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to present evidence to support the claims."  *Schumer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).  For Rule 12(b)(6) purposes, the court must accept all the plaintiff's factual allegations as true, drawing all reasonable inferences in the plaintiff's favor.  The pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists on which relief could be accorded the pleader.  If it fails to do so, a motion under Rule 12(b)(6) will be granted.  2 *Moore's Federal Practice 3d* § 12.34[1][b].

## 2.      Claim that the Debt is Dischargeable under § 523(a)(6)

The Debtor's complaint seeks to discharge the debt to the Defendant pursuant to § 523(a)(6), claiming that the Defendant's conduct justifies the discharge of the debt.  *See* Complaint, Adversary Proceeding no. 08-01128, Docket no. 1, at pp. 6-7,8.  The Court determines that this is a claim upon which relief cannot be granted.  Under § 523(a)(6), "[a] discharge under § 727 . . . does not discharge *an individual debtor* from any debt . . . for willful and malicious injury *by the debtor to another entity or to the property of another entity*."  11

U.S.C. § 526(a)(6) (emphasis added).  Section 523(a)(6) creates an exception to the general rule

that debts are discharged.  It does not provide a mechanism for converting a nondischargeable

debt into a dischargeable debt.

For the purposes of analyzing the Motion to Dismiss under Rule 12(b)(6), the Court – as

it is required to do – accepts all the plaintiff's factual allegations as true and draws all reasonable

inferences in the Debtor's favor.  Doing so, it is clear that Debtor can prove no set of facts in

support of his claim that would entitle him to discharge an otherwise non-dischargeable debt

under § 523(a)(6) regardless of the Defendant's conduct.  Accordingly, dismissal of this portion

of the Debtor's complaint is appropriate under Rule 12(b)(6).

**3.      Claim that the Debt is Dischargeable under Former §§ 523(a)(5) and (a)(15)**

**A      Affirmative Defense of Preclusion**

Preclusion is an affirmative defense under Fed. R. Civ. P. 8(c)(1) ("Rule 8(c)(1)"), which

is made applicable to proceeding under Title 11 by Bankruptcy Rule 7008(a).  Under Rule

8(c)(1), "the defendant generally is required to plead it in his [or her] answer." *Brantley*, 2004

WL 2381791, at *3; *see* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must

affirmatively state any avoidance or affirmative defense, including: . . . res judicata").  However,

"[w]hen . . . 'all relevant facts are shown by the court's own records . . . the defense [of res

judicata] may be upheld on a Rule 12(b)(6) motion without requiring an answer.'" *Brantley*,

2004 WL 2381791, at *3 (quoting *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)).

Additionally, "the Court may consider matters of which judicial notice may be taken in

evaluating a motion to dismiss under [Rule] 12(b)(6), which include 'prior pleadings, orders,

judgments, and other items appearing in the Court's records of prior litigation that is closely

related to the case sub judice[, especially where a res judicata defense is predicated on facts not

9

disputed in the earlier litigation]."'  *See id*. at *3 n.4 (quoting *Hackett v. Storey*, No. 3:03 CV

395, 2003 WL 23100328, at *2 (D. Conn. Dec. 30, 2003)).

The doctrines pertaining to preclusion are unfortunately subject to terminology that

sometimes overlaps:  "Res judicata" and "collateral estoppel."  While these two terms refer to

conceptually distinguishable doctrines, the term "res judicata" has occasionally been used to refer

broadly to both.  In *Brantley v. New Haven Firefighters Local 825*, No. 3:03 CV 1904, 2004 WL

2381791, at *2 (D. Conn. Oct. 15, 2004) (reviewing *New Hampshire v. Maine*, 532 U.S. 742,

748 (2001)) the court noted that "[r]es judicata is a judicial doctrine encompassing two different

principles, commonly referred to as claim preclusion and issue preclusion."  *Cf. Allen v.*

*McCurry*, 449 U.S. 90, 94 n.5 (noting while some courts and commentators use "res judicata" as

generally meaning both forms of preclusion, that is, "claim preclusion" and "issue preclusion,"

*Restatement (Second) of Law of Judgments* § 74 (Tent. Draft No. 3, 1976) refers to "res judicata"

as "claim preclusion" and "collateral estoppel" as "issue preclusion.").  "Claim preclusion

generally refers to the effect of a prior judgment in foreclosing successive litigation of the very

same claim, whether or not relitigation of the claim raises the same issues as the earlier suit."

*New Hampshire*, 532 U.S. at 748.  Specifically, under claim preclusion, "[i]f subsequent

litigation arises from the same cause of action, then the prior decision bars litigation not only of

all matters which were 'actually offered and received to sustain the demand, but also [of] every

[claim] which might have been presented.'"  *In re Grossinger's Assocs.*, 184 B.R. 429, 433

(Bankr. S.D.N.Y. 1995) (quoting *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898

F.2d 1544, 1549 n.3 (11th Cir. 1990)).  "The principle underlying the rule of claim preclusion is

that a party who once has had a chance to litigate a claim before an appropriate tribunal usually

ought not to have another chance to do so."  *Id*. at 434 (quoting *Restatement (Second) of Law of*

*Judgments* ch. 1 at 6 (1982)).  In contrast, "[i]ssue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire*, 532 U.S. at 748-49.  The underlying principle of issue preclusion is that "one who has actually litigated an issue should not be allowed to relitigate it . . . ." *Grossinger's Assocs.*, 184 B.R. at 434.

Generally, under the doctrine of res judicata, when taken to mean claim preclusion, a judgment on the merits in a prior suit bars a second suit involving the same parties based on the same cause of action for issues that were or could have been raised in the first action.  *See, e.g., G & T Terminal Packaging Co., Inc. v. Consol. Rail Corp.*, 719 F. Supp. 153, 157-59 (S.D.N.Y. 1989).  Collateral estoppel, or issue preclusion, on the other hand, bars the relitigation of an issue that was raised, litigated, and decided in a prior proceeding.  *See id.*  "Unlike res judicata, . . . collateral estoppel precludes the relitigation of conclusively determined issues even if the plaintiff bases the subsequent suit on a different cause of action." *Id.*

**B.**     **Issues Raised in this Adversary Proceeding**

As noted, the Debtor seeks, under former §§ 523(a)(5) and (a)(15), to discharge a debt to Defendant in the amount of $39,243.00 arising under a state Supreme Court order in connection with divorce proceedings between the Debtor and the Defendant.

**(i)**     **Debts Excepted from Discharge under Former § 523(a)(5)**

Under former § 523(a)(5), a discharge under § 727 did not discharge

> an individual debtor for any debt . . . to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that –
>
>       . . .

11

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.

Former § 523(a)(5) categorically excludes from discharge any debt for "alimony, maintenance, or support," without exception.  Former § 523(a)(5)(B) requires the bankruptcy court to conduct an independent inquiry to determine whether a debt characterized as alimony, maintenance, or support was actually in the nature of alimony, maintenance, or support.  This determination is made under federal, not state, law, and is not governed by state law treatment of the obligation nor by the label the parties have used to describe the obligation.  *See In re Young*, 35 F.3d 499 (10th Cir. 1994).  The terms "alimony" and "support" are given a broad construction to promote the congressional policy favoring enforcement of obligations for spousal and child support.  *See In re Peters,* 133 B.R. 291 (Bankr. S.D.N.Y. 1991), *aff'd* 964 F.2d 166 (2d Cir. 1992).  Once the debt is determined to be for alimony, maintenance, or support, the inquiry is at an end; the debt is excepted from discharge.

**(ii)    Dischargeability of Debts under former § 523(a)(15)**

Only if a debt is *not* a debt for alimony, maintenance, or support, under former § 523(a)(5) can relief under former § 523(a)(15) be sought.

Under former § 523(a)(15), a discharge under § 727 does not discharge

an individual debtor for any debt . . . *not of the kind described in paragraph (5)* that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless –

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

12

>(B) discharging such debt would result in a benefit to the debtor that
>outweighs the detrimental consequences to a spouse, former spouse, or
>child of the debtor.

11 U.S.C. § 523(a)(15) (emphasis added). By its terms, former § 523(a)(15) applies *only* to

debts that are not debts for "alimony, maintenance, or support." *Id.* If, however, the debt was

incurred in the course of a divorce or separation or in connection with a separation agreement,

divorce decree or other order of a court of record and is not for alimony, maintenance, or

support, the bankruptcy court may proceed to determine whether the debt may be dischargeable

if the debtor can meet either the inability to pay test of former § 523(a)(15)(A) or the hardship-

balancing test of former § 523(a)(15)(B). Thus, if the bankruptcy court determines under former

§ 523(a)(5) that the debt is for alimony, maintenance, or support, the debt is nondischargeable,

and relief under former § 523(a)(15) is inapplicable and, therefore, such relief cannot be granted

as to that debt.

## C.   Application of Preclusion Doctrines to Issues Raised in this Case

### (i)   Prior Determination

The issue of whether the $39,243.00 award from the state court was a dischargeable debt

arose in the context of the Contempt Motions brought under former § 362(b)(2)(B) in the main

bankruptcy proceeding; the current proceeding is an adversary proceeding to determine the

dischargeability of that debt under former §§ 523(a)(5) and (a)(15).

Under former § 362(b)(2)(B), "[t]he filing of a petition . . . does not operate as a stay . . .

of a civil action or proceeding for . . . the collection of alimony, maintenance, or support from

property that is not property of the estate." To determine whether an entity's actions were

excepted from the automatic stay under former § 362(b)(2)(B) requires a two-fold determination:

(1) the court must determine whether or not the debt was for "the collection of alimony,

maintenance, or support;" and (2) the court must determine whether the property sought to be

13

collected was property of the estate.  Both elements must exist or the entity's activity is not excluded from the stay.[8]

### (ii)    Claim Preclusion

The Debtor filed the Contempt Motions and by doing so requested that the Court find that the Defendant had violated the § 362(a) stay by attempting to collect a dischargeable debt. Further, he sought a determination that the underlying debt was not for alimony, maintenance, or support, and therefore, that the § 362(a) stay applied.  Since the Debtor, by his actions, sought a determination of whether the Defendant's actions violated the stay under former § 362(b)(2)(B), this required a two-fold determination (1) the type of debt; and (2) whether the property sought to be applied to payment of the debt was property of the estate.  In contrast, determination of the dischargeability of a debt under former §§ 523(a)(5) and (a)(15) focuses solely on the nature of the debt.  Because the Contempt Motions and this adversary proceeding are based on different causes of action, and because the procedural requirements differ, res judicata – in the narrow meaning of claim preclusion – does not apply.  *See, e.g., G & T Terminal Packaging Co., Inc. v. Consol. Rail Corp.*, 719 F. Supp. 153, 157-59 (S.D.N.Y. 1989) (judgment on the merits in a prior suit bars a second suit involving the same parties based on the same cause of action).

### (iii)    Issue Preclusion

Upon review of the record in the contempt proceedings, the Court determines that because the Court necessarily determined that the debt was nondischargeable under former § 523(a)(5) as part of it's ruling on the First Contempt Motion, the doctrine of collateral estoppel,

---

[8] Although Fed. R. Bankr. P. 7001(6) states that an adversary proceeding is a proceeding "to determine the dischargeability of a debt," neither the Debtor nor the Defendant, then represented by counsel, raised the issue that the determination of the dischargeability issue be made in the context of an adversary proceeding.

or issue preclusion, is applicable.  As set forth in the Court's explanatory minutes on the hearing

on the Second Contempt Motion,

> The Court evaluated the record from the state court proceedings and parties'
> submissions and found that the debt owed to the Defendant was nondischargeable
> because it was in the nature of support and maintenance.  The Court considered,
> among other things, the payments made by the Defendant for household
> maintenance, utilities, and nursery school, in addition to her portion of the child
> support obligation and her status as custodial parent at the time.  Further, the
> Court considered that the state court declined to award to the Defendant an award
> for "temporary maintenance."  However, the payments at issue evidence in large
> part child support payments in the context of education and shelter, etc.

Minutes of Proceedings, case no. 05-45706, Docket No. 43, Exhibit A at p.3.  At issue in the

contempt proceeding was whether the Defendant and others were in violation of the automatic

stay of § 362.  In making its ruling, the Court determined that the actions by the parties alleged to

be in contempt did not violate the automatic stay under former § 362(b)(2)(B).  In so ruling, the

Court necessarily determined that the debt that the parties alleged to be in contempt were

attempting to collect was a debt for alimony, maintenance, or support under former § 523(a)(5).

        The determination that the debt was alimony, maintenance, or support was a necessary

element of resolving the contempt motion, as it is specifically enumerated in former

§ 362(b)(2)(B), which provides that "[t]he filing of a petition . . . does not operate as a stay . . .

under subsection (a) of this section of the commencement or continuation of an action or

proceeding for . . . the collection of alimony, maintenance or support from property that is not

property of the estate."  This distinguishes the Court's analysis in the context of the contempt

motion finding that the debt was for alimony, maintenance, or support, from the bankruptcy

court's ruling at issue in *Orion Pictures v. Showtime Networks, Inc. (In re Orion Pictures)*, 4 F.3d

1095 (2d Cir. 1993).  In *Orion*, the issue before the bankruptcy court was the assumption by the

debtor of an executory contract under § 365.  As part of ruling on the motion to assume, the

bankruptcy court in *Orion* determined that a key-man provision in the contract sought to be

assumed had not been violated.  In reversing the bankruptcy court, the Second Circuit stated that "it was error for the bankruptcy court to decide a disputed factual issue between the parties to a contract in the context of determining whether the debtor or trustee should be permitted to assume that contract. *Id*. at 1098.  The Second Circuit also noted that "[a]t heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate." *Id.*

In a case decided prior to *Orion*, another judge of this court held that a prior determination to reject a contract was not res judicata in a subsequent adversary proceeding to avoid the contract as a preferential transfer.  *See L.J. Hooker Int'l Florida, Inc. v. Gelina (In re Hooker Investments, Inc.)*, 131 B.R. 922 (Bankr. S.D.N.Y. 1991).  In that case, the debtor had previously obtained a court order rejecting an executory contract.  The debtor thereafter filed an adversary proceeding to set the contract aside as a preferential transfer.  The defendant contended that the court order approving the rejection of the contract affirmed the validity of the contract.  *Id.* at 927.  The court rejected this contention, noting that different standards applied to the rejection motion and the preferential transfer action.  *Id*.  The court also pointed out the differing procedural context between the rejection motion, a contested matter under Fed. R. Bankr. P. 9014, and the preferential transfer action, an adversary proceeding under the Part VII rules.  *Id*. at 929.  However, the court further pointed out that "[t] his is not to say that application of res judicata to bankruptcy court determinations turns exclusively on whether the prior adjudication was rendered in a contested matter or adversary proceeding." *Id.* at 931.

Further, the instant case is also distinguishable from the Fifth Circuit's decision in *D-1 Enterprises v. Commercial State Bank*, 864 F.2d 36 (5th Cir. 1989).  In that case, the court held

that an agreed order lifting the automatic stay and abandoning certain of the debtor's assets to a secured creditor was not entitled to res judicata effect in a subsequent adversary proceeding against the secured creditor.  The court pointed out there was no provision for bringing compulsory counterclaims in stay litigation, so that the debtor's claims against the secured lender could not have been brought in the context of the motion for relief from stay.  The court stated "[i]t would be odd indeed if a claim that was not required as a compulsory counterclaim by the Bankruptcy Rules and in fact could not be litigated as a defense to the motion for relief from the stay was nonetheless barred by res judicata within the same case." *Id*. at 39.  In another case, the Fifth Circuit pointed out that the procedural context in which the earlier determination was made was not a "litmus test" for determining if a subsequent action should be barred.  *See Howe v. Vaughn (In re Howe)*, 913 F.2d 1138, 1146 n.28 (5th Cir. 1990).

Here, in contrast, the prior contested matter required the court to undertake the same analysis to determine whether the debt was for alimony, maintenance or support (and therefore not stayed under § 362(b)(2)(B)) as it is required undertake to determine whether the debt is excepted from discharge under § 523(a)(5) in the present adversary proceeding, and that issue was fully litigated, and upheld on appeal, in the prior determination.

The crucial distinction between this case and the cases cited above is that those cases did not involve a provision of the Bankruptcy Code that mandated a factual determination of the nature and type of the underlying debt.  In *Orion*, the Second Circuit noted that "[a]lthough several bankruptcy courts have read § 365 as authorizing them to resolve questions involving the validity of contract before deciding whether to permit the trustee or debtor[]in[]possession to assume the contracts . . . nothing in § 365 provides such authorization." *Id*. at 1099.  In contrast to the "business judgment" that a bankruptcy court uses to decide a motion to assume, *see id.*, the

17

determination under § 362(b)(2)(B) that the activity that was the subject of the Contempt

Motions was not stayed necessarily required a determination of the underlying issue of whether

the debt was for alimony, maintenance, or support in order to determine whether particular

activity was excepted from the automatic stay.  Since that issue was fully reviewed by the Court

in the context of both Contempt Motions, as well as by the District Court on the Debtor's appeal

of the Court's ruling on the Contempt Motions, application of the doctrine of collateral estoppel,

or issue preclusion, is appropriate here.  Because the debt at issue in this adversary proceeding is

one for alimony, maintenance, or support, it is excepted from discharge under former

§ 523(a)(5).  Dismissal of this claim for relief is appropriate under Rule 12(b)(6).

**(D)        Former § 523(a)(15) Does Not Apply**

As noted above, former § 523(a)(15) *only* applies when the debt at issue is not a debt for

alimony, maintenance, or support.  *See supra*, at 12.  In connection with the Contempt Motions,

the Court previously determined that the debt was for alimony, maintenance, or support.  That

prior determination collaterally estops Debtor from relitigating that issue in this adversary

proceeding.  Because it has been established that the debt is a debt for alimony, maintenance, or

support, the debt does not fall within the provisions of former § 523(a)(15) and cannot be

discharged under that section.  Since relief cannot be granted under this section, dismissal of this

claim for relief is appropriate under Rule 12(b)(6).

**4.        Relief from Judgment or Order**

While not set forth in the Debtor's Complaint, in view of the Debtor's *pro se* status, the

Court has reviewed the Debtor's Complaint as a pleading seeking relief from the prior order

under Fed. R. Civ. P. 60(b) ("Rule 60(b)"), made applicable to cases under Title 11 by Fed. R.

Bankr. P. 9024.

Under Rule 60(b), the court may relieve a party from a final judgment, order, or proceeding for several reasons, including (1) mistake, inadvertence, surprise, or inexcusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic) by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.  Under Rule 60(c), a motion for relief under Rule 60(b)(1), (2), or (3) must be made within a year of the entry of the judgment or order or the date of the proceeding.  For all other reasons, the motion must be made within a reasonable time.[9]

The latest date of a ruling by the Court on either the First Contempt Motion or the Second Contempt Motion was the order denying the Debtor's motion for reconsideration of the Court's October 18, 2006 order on the Second Contempt Motion.  The order denying the motion for reconsideration was entered on the docket on October 31, 2006.  *See* Order Signed on 10/31/2006 Denying Debtor's Motion for Reconsideration, Case no. 05-45706, Docket No. 47. This adversary proceeding was filed on March 10, 2008, more than a year later.  Because of the lapse of time, the Court could not, even were it so inclined, grant relief under Rule 60(b)(1),

---

[9] Rule 60(b)(6) cannot be used to extend the time limitations contained in Rule 60(b) for moving the Court for relief from a judgment or order.  Therefore, Rule 60(b)(6) cannot be used to extend the time periods within which relief can be granted under Rule 60(b)(1), (2), or (3).  *See* Fed. R. Civ. P. 6(b)(2) ("A court must not extend the time to act under Rule[] . . . 60(b), except as those rules allow."); *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 700 (2d. Cir. 1972) (finding that the one year limitations contained in Rule 60(b) cannot be circumvented by invoking Rule 60(b)(6)); *Alling v. American Tool & Grinding Co.*, 101 F.R.D. 364, 365 (D. Colo. 1984) ("[C]ourts are unanimous . . . that where a motion should have been brought under (b)(2) or (3), (b)(6) cannot be used to circumvent the one year limitation.")(citing *Great Coastal Express, Inc. v. International Brotherhood of Teamsters, Etc.,* 675 F.2d 1349, 1355 (4th Cir. 1982); *Kerwit Medical Products, Inc. v. N & H Instruments, Inc.*, 616 F.2d 833, 836-37 n.8 (5th Cir. 1980)).

(2),[10] or (3).  *See* Fed. R. Civ. P. 60(c)(1) ("A motion under Rule 60(b) must be made within a

reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the

judgment or order or the date of the proceeding."); *see also* Fed. R. Civ. P. 6(b)(2) ("A court

must not extend the time to act under Rule[] . . . 60(b), except as those rules allow."); *see also*

Fed. R. Bankr. P. 9006(b)(2) ("The court may not enlarge the time for taking action under Rule[]

. . . 9024."); Fed. R. Bankr. P. 9024 ("Rule 60 F.R. Civ.P. applies in cases under the Code . . . .").

Further, the Court's prior rulings on the Contempt Motions are not void; indeed, they

were affirmed on appeal by the District Court, so there are no grounds for relief under Rule

60(b)(4).  The Court's prior rulings have not been satisfied, vacated or discharged, nor were they

based on an earlier judgment that was reversed or vacated, as the Court made an independent

determination under § 362(b)(2)(B) that the debt was a non-dischargeable debt for alimony,

maintenance, or support.[11]  There has been no showing that applying the judgment is no longer

equitable.  Finally, upon review of the record and the pleadings filed in this adversary proceeding

as well as in the main case, the Court finds no other reason justifying relief under Rule 60(b)(6).

---

[10] To prevail under Rule 60(b)(2) on the grounds of newly discovered evidence, "the movant must have been justifiably ignorant of [the evidence] despite due diligence . . . ." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (citing *United States v. IBT*, 179 F.R.D. 444, 447 (S.D.N.Y. 1998)).  In the complaint, the Debtor argues that his payment of the mortgage was neither child support nor maintenance since the Defendant stated in a November 2003 state court affidavit that she moved out of the marital home in May 2003.  *See* Complaint, Adversary Proceeding No. 08-01128, Docket No. 1, at p. 5-6.

  The only evidence that would qualify in order to grant relief under Rule 60(b)(2) would be newly discovered evidence.  The Debtor does not claim he was unaware of the affidavit but the Court finds it impossible to believe how the Debtor could not have been aware of it.  First, the Debtor was the opposing party to the state court action in which the Defendant submitted the affidavit.  Therefore, either the Debtor had knowledge of the affidavit since late 2003 or the Debtor could have discovered the affidavit with a minimal amount of due diligence since he was party to the state court action.  If the Debtor had knowledge of the affidavit and the information therein, he had two opportunities to raise these facts before the Court in the First Contempt Motion and the Second Contempt Motion, both of which addressed whether the Debtor's mortgage payments on the marital home constituted alimony, child support or maintenance.  The Court heard the First Contempt Motion on June 21, 2006, *see* Min. Order, July 19, 2006, Case No. 05-45706, Docket No. 15, and the Second Contempt Motion on October 12, 2006.  *See* Min. Order, Oct. 18, 2006, Case No. 05-45706, Docket No. 43. at p. 1.  In light of these facts, the Court finds that the Debtor could not satisfy his burden under Rule 60(b)(2).

  [11] Although the Court believes that Mr. Chase may still be challenging the state court order directing payment of the mortgage and determining the amount to be paid, that order is, as of the date of the opinion, still in full force and effect.

**CONCLUSION**

Having considered the Motion to Dismiss filed by the Defendant, the response and other

pleadings filed in this adversary proceeding, together with the entire record of the underlying

bankruptcy case and related adversary proceedings and the arguments of the parties at the

hearing, the Court determines:

1.      The motion to dismiss is granted for the reasons set forth above; and

2.      There are no grounds to grant relief from the judgment under Rule 60(b) for the

reasons set forth above.

An appropriate Order will be entered simultaneously herewith.


Dated:  New York, New York
        August 18, 2008



                            **s/Arthur J. Gonzalez**
                            United States Bankruptcy Judge